Liebman v Albany Med. Ctr. (2025 NY Slip Op 06949)

Liebman v Albany Med. Ctr.

2025 NY Slip Op 06949

Decided on December 11, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 11, 2025

CV-25-0139
[*1]Laura Liebman et al., Appellants,
vAlbany Medical Center et al., Respondents.

Calendar Date:October 15, 2025

Before:Pritzker, J.P., Reynolds Fitzgerald, Ceresia, McShan and Powers, JJ.

Cooper Erving & Savage LLP, Albany (Phillip G. Steck of counsel), for appellants.
Bond, Schoeneck & King PLLC, Albany (Mara D. Afzali of counsel), for respondents.

Pritzker, J.P.
Appeal from an order of the Supreme Court (Christina Ryba, J.), entered January 21, 2025 in Albany County, which, among other things, denied plaintiffs' motion to amend the complaint.
Around February 2022, plaintiff Jamaica Miles was hired to be the director of community engagement at defendant Albany Medical Center (hereinafter AMC). Plaintiff Laura Liebman, then assistant vice president for advancement at defendant Albany Medical Center Foundation (hereinafter the foundation) and James Kellerhouse, the chief development officer of the foundation, were part of the hiring team. As relevant here, Miles had previously been arrested while participating in a Black Lives Matter (hereinafter BLM) protest so, prior to her hiring, Kellerhouse inquired with Sandra Castilla, a human resources representative,[FN1] about whether Miles' arrest could preclude her employment with AMC and the foundation. Castilla advised that the arrest posed no barrier to employment because the charges had been dismissed. In March 2022, Miles was terminated from her employment, purportedly because her activism was inconsistent with AMC's desire to remain apolitical. Shortly thereafter, AMC launched an investigation into the hiring of Miles and determined that Liebman and Kellerhouse had not followed proper hiring procedures, and their employment was also terminated.
In May 2022, plaintiffs commenced this action, asserting causes of action for discrimination and retaliation and alleging various actions by defendants that violated the Human Rights Law. As relevant here, plaintiffs alleged that defendants retaliated against Liebman for protesting that Miles' termination was racist. Following joinder of issue, a contentious discovery process ensued, involving numerous adjournments and motions to compel. In August 2024, Kellerhouse was subpoenaed for deposition and produced a text message exchange wherein defendant Dennis P. McKenna, chief executive officer of AMC, told Kellerhouse that he was "furious" that he had hired someone with an arrest record. In September 2024, plaintiffs filed a motion for leave to amend their complaint to state, among other things, that Liebman was also retaliated against for hiring a person with an arrest record. Defendants opposed, arguing that plaintiffs' proposed amendments were meritless and prejudicial and/or unnecessary. Supreme Court denied the motion, finding, among other things, that plaintiffs' proposed claim that Liebman was retaliated against for hiring someone with an arrest record did not support a claim for retaliation under the Human Rights Law. Plaintiffs appeal.
Plaintiffs contend that Supreme Court erred in denying their motion for leave to amend their complaint. Pursuant to CPLR 3025 (b), "[a] party may amend his or her pleading, or supplement it by setting forth additional or subsequent transactions or occurrences, at any time by leave of court . . . . Leave shall be freely given." "The movant need not establish the merits of the proposed [*2]amendment, and, in the absence of prejudice or surprise resulting directly from the delay in seeking leave, such applications are to be freely granted unless the proposed amendment is palpably insufficient or patently devoid of merit" (Matter of Falck,232 AD3d 1150, 1154 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]; see Petry v Gillon,199 AD3d 1277, 1280 [3d Dept 2021]). "The decision whether to grant leave is within the trial court's discretion and, absent an abuse of that discretion, will not be disturbed" (Petry v Gillon,199 AD3d at 1280 [citations omitted]; see Matter of Perkins v Town of Dryden Planning Bd.,172 AD3d 1695, 1697 [3d Dept 2019]). As relevant here, under the Human Rights Law, it is unlawful to retaliate against a person "because he or she has opposed any practices forbidden under [the Human Rights Law]" (Executive Law § 296 [7] [emphasis added]). "It shall be an unlawful discriminatory practice . . . to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual" (Executive Law § 296 [16]). To establish a prima facie retaliation claim, "the plaintiff must show that (1) they have engaged in protected activity, (2) the defendant[s] w[ere] aware that the plaintiff participated in the protected activity, (3) the plaintiff suffered adverse action based upon the activity, and (4) there is a causal connection between the protected activity and the adverse action" (Matter of Clifton Park Apts., LLC v New York State Div. of Human Rights,41 NY3d 326, 331 [2024] [internal quotation marks and citation omitted]; see Rosen v Price Chopper,239 AD3d 1132, 1135 [3d Dept 2025]).
The original complaint stated that McKenna sent Kellerhouse a series of text messages stating that he was "furious" at Kellerhouse and Liebman for hiring Miles and further asserted that Liebman engaged in protected activity when she protested Miles' termination as racist. It also alleged that there was "a causal connection between [Liebman's] complaint of race discrimination and the termination of her employment." Paragraph 21 of the proposed amended complaint adds in quoted language from McKenna's text messages to Kellerhouse — specifically, that he was "furious" that "[w]e just hired a person to lead our community efforts who was arrested and you never told me." Paragraph 50 of the amended complaint seeks to add the assertion that Liebman engaged in "protected activity" when she hired Miles, "knowing she had been arrested and that the charges were dismissed," and that there was a causal connection between Liebman's "complaint of race discrimination, her hiring of an employee that had been arrested, and the termination of her employment." In support of their motion to amend the complaint, plaintiffs submitted, among other things, a memorandum of law in which [*3]they argued that the amended complaint "does not assert new causes of action but simply fortifies causes of action previously asserted." Plaintiffs made no arguments regarding the merit of their proposed amendments, but did note that leave to amend should generally be freely granted unless the proposed amendments are facially meritless.
In opposition, defendants argued that Liebman did not have a viable retaliation claim for hiring someone with an arrest record because hiring someone with an arrest record is not a "protected activity." Additionally, they asserted that Liebman's objections to Miles' termination were based solely on racial discrimination, rather than an arrest record. In support of this assertion, defendants submitted excerpts from Liebman's deposition testimony wherein she stated that, the day after Miles was terminated, she was called into a meeting with the chief compliance officer, among others, and informed that AMC was investigating the hiring of Miles. Liebman was confused and expressed that, rather than the hiring, Miles' termination should be investigated because "something racist happened yesterday. [Miles] was terminated for a racist reason." Liebman further testified that her own firing was "racist," based on a "sham excuse" and "retaliation for speaking out." Liebman further stated that she was terminated for hiring Miles, "a [B]lack woman who was a progressive left-leaning individual," and for speaking out that Miles' termination was for "racist reasons." When asked what protected activity she believed she engaged in, Liebman responded: "I spoke out against racism."
In their reply memorandum of law, plaintiffs asserted, among other things, that Liebman's belief and protest that Miles' termination was "a product of racism is broad enough to include the concept" that Miles was terminated because of her arrest at a BLM rally. Plaintiffs also claimed that Liebman did not need to specifically protest that Miles was improperly terminated due to her arrest record to establish a retaliation claim on that ground. Supreme Court denied the motion to amend the complaint finding, among other things, that plaintiffs' "proposed new" retaliation claim was legally insufficient because it does not allege that Liebman opposed the termination of Miles based on her arrest record or that Liebman was terminated for such conduct. Moreover, Supreme Court found that the retaliation claim based on "knowingly hiring an individual with an arrest record . . . [does] not support a claim for retaliation under the Human Rights Law."
The precise issue on appeal is quite narrow and distills to whether Supreme Court should have granted plaintiffs leave to amend the complaint to assert that Liebman was retaliated against for hiring a person with an arrest record. Simply stated, the mere fact that Liebman hired Miles, a person with an arrest record, is insufficient to show that she engaged in protected activity, even if she believed management would oppose [*4]hiring a Black, female activist (see generally McKenzie v Meridian Capital Group, LLC,35 AD3d 676, 677-678 [2d Dept 2006]). Since the hiring of Miles alone is not a per se protected activity (see e.g. Executive Law § 296 [1] [e]; Albunio v City of New York, 16 NY3d 472, 479 [2011]), the amendment — particularly paragraphs 50 and 51, which seek to advance this theory — is palpably improper since it fails to meet the requirements of the first element of the test set forth in Matter of Clifton Park Apts., LLC v New York State Div. of Human Rights (41 NY3d at 331).
This determination, however, does not end the discussion, as we must emphasize that affirming the denial of plaintiffs' leave to amend does not prohibit them from attempting to prove retaliation by demonstrating that Liebman engaged in a protected activity when she opposed the termination of Miles on the basis that she was arrested.[FN2] In this regard, and contrary to Supreme Court's findings, Liebman's opposition to Miles' termination based on racial discrimination is sufficient to encompass opposition to Miles' termination based on her arrest record. Contrary to defendants' assertion, a plaintiff alleging retaliation need not oppose discrimination on a specific ground, as long as a jury could reasonably find a causal connection between his or her opposition and the alleged retaliatory conduct (see Albunio v City of New York,16 NY3d at 479; see e.g. Matter of Board of Educ. of New Paltz Cent. School Dist. v Donaldson, 41 AD3d 1138, 1141 [3d Dept 2007], lv denied 10 NY3d 706 [2008]). Here, Liebman was terminated shortly after McKenna and other management became aware that Miles was arrested while protesting racial discrimination. Additionally, Liebman was terminated shortly after Castilla informed senior management that it was illegal to base a hiring determination on a dismissed criminal charge. While Liebman did not specifically allege she protested that Miles was discriminated against because of her arrest record, she made her disapproval quite clear and communicated that she thought the termination of Miles was discriminatory and wrong (see Albunio v City of New York, 16 NY3d at 479; Board of Educ. of New Paltz Cent. School Dist. v Donaldson, 41 AD3d at 1140; compare Cotterell v State of New York,129 AD3d 653, 655 [2d Dept 2015]). Moreover, a jury could reasonably infer a causal connection between Miles' participation and subsequent arrest at a BLM protest, Liebman's protest to Miles' termination based on racial discrimination and Liebman's ultimate termination (see Board of Educ. of New Paltz Cent. School Dist. v Donaldson, 41 AD3d at 1140; compare Cotterell v State of New York, 129 AD3d at 655). It is all intertwined. Thus, despite affirming the denial of the motion to amend, plaintiffs' initial complaint is, in our view, broad enough to encompass proof at trial that defendants retaliated against Liebman based on her general protest of discrimination, even though not specifically mentioning [*5]Miles' arrest. Accordingly, plaintiffs are not foreclosed from demonstrating that Liebman's firing was retaliatory and all or in part based upon Miles' arrest, which, after all, occurred at a BLM rally. This claim need not be set forth in a separate cause of action and indeed the proposed amendment did not set forth a separate cause of action. Given our affirmance, we need not address the arguments relative to prejudice and, also, we find Liebman's argument that she was fired because she associated with a person who had been arrested to be unpreserved.
Reynolds Fitzgerald, Ceresia, McShan and Powers, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: It is unclear from the record whether Castilla is a representative for AMC, the foundation, or both.

Footnote 2: Plaintiffs, on appeal, also argue that Liebman has a cause of action on the ground that she was retaliated against for hiring a person who had been arrested. However, a careful review of plaintiffs' proposed amended complaint reveals that they did not seek to add a cause of action to this effect, thus, we need not reach this argument.